IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARRON LOVE, | ) |
| *Plaintiff-Appellant*, | ) |
| | ) No. 21 C 6683 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| *Defendant-Appellee*. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff-Appellant Sharron Love was denied disability insurance benefits (DIB) and supplemental security income (SSI) benefits. (Dkt. 1; Dkt. 7). She seeks judicial review of the administrative law judge's (ALJ) finding that she does not need a cane for the ambulation required for light work. (Dkt. 7). The Defendant-Appellee Commissioner moves for summary judgment. (Dkt. 8). For the following reasons, the Court grants the Motion. [8]

BACKGROUND

**Treatment Records and Procedural History**

Sharron Love was hospitalized with injuries from a car accident on December 22, 2019. She broke her right femur and injured toes on her right foot. (Dkt. 4-1 at 19; *id.* at 44). She had surgery on her right hip and was discharged to a rehabilitation facility about a week later. (*Id.* at 358; *id.* at 613). She spent about two weeks at Symphony Aria, an inpatient rehabilitation facility, for occupational and physical therapy. (Dkt. 4-2 at 945–46). While there, Love was transported to Cook County's Stroger Hospital ED for severe pain in two toes of her right foot, which appeared dislocated and were significantly tender even to light palpitation. (Dkt. 4-1 at 533–35). Physicians

1

corrected the dislocated toes—a closed reduction, performed under sedation—then discharged her back to the rehabilitation facility. (Dkt. 4-1 at 539–44). She checked out of Symphony Aria against medical advice on January 13, 2020. (Dkt. 4-2 at 1040–41). She was not yet able to bear weight on her right side. (*Id.*)

The following month, in February 2020, Love applied for DIB and SSI benefits. (Dkt. 4-1 at 228–40). Her hip continued to cause pain and stiffness in her legs. (*Id.* at 45). In her June 2020 function report, she reported pain while walking and having a limp. (*Id.* at 288). She claimed she could walk for about 30 minutes before needing to stop and rest for a few minutes. (*Id.*) Following her hospitalization, she reported going from using a wheelchair, walker, and crutches to using a cane. (*Id.* at 289). Her mother submitted a third-party report in May 2020, which also indicated difficulty standing or walking for longer than short periods of time. (*Id.* at 267–68, 270). She noted that Love could only walk "half a block" before needing to stop and rest for a few minutes. (*Id.* at 270). No cane use was mentioned. (*Id.* at 271).

At an August 10, 2020, appointment, Dr. Dilip Patel performed a consultative examination for the state agency and found that Love had pain in her right hip and sensitivity in the toes of her right foot. (Dkt. 4-3 at 1226, 1229). Dr. Patel also noted Love's decreased range of motion in the right hip and knee. (*Id.* at 1229). He observed that she "used the cane most of the time." (*Id.*) Dr. Marion Panepinto reviewed Dr. Patel's assessment and the medical record for the agency's initial residual functional capacity (RFC) assessment. She opined that Love could stand and walk with "normal breaks" for a total of about six hours in an eight-hour workday. (*Id.* at 72). She observed Love had a "limping gait due to pain" but opined that her pain "should resolve with additional healing." (*Id.* at 73). Dr. Panepinto did not mention any use of a cane in her review. (*Id.* at 67–73). Love's claim was denied August 17, 2020. (Dkt. 4-1 at 16, 139).

At the reconsideration stage, Dr. Bharati Jhaveri evaluated the medical record and on October 17, 2020, concurred with Dr. Panepinto's findings and RFC assessment. (Dkt. 4-1 at 85–95). He specifically referenced Love's "suffering from back/hip pain which limits her ability to stand, walk, sit and lay down. This also prevents her from performing household chores and cooking." (*Id.* at 86). He acknowledged that Love alleged a worsening of her condition since June 2020 but had submitted no new medical evidence. (*Id.* at 93). On November 6, 2020, Dr. Jhaveri provided an additional explanation of his RFC assessment. He stated, "She had moderate stiffness, mild-to-moderate pain related to the right femur, and had a limping gait. She uses a cane most of the time and was not able to walk in heels/toes or squat. ROM was decreased in the right hip and right knee." (*Id.* at 111, 116, 126, 131). Love also submitted another function report in November 2020. (*Id.* at 304–12). She again reported using a cane she bought to balance while walking. (*Id.* at 310). She asserted she could only walk for 20 minutes before taking a 10- to 15-minute rest. (*Id.* at 309).

The agency denied reconsideration on November 18, 2020. (Dkt. 4-1 at 149–51). Following this denial, Dr. Mary Ann Bender examined Love in December 2020 and diagnosed her with acquired hammer toe deformity of the lesser toe of right foot, acquired hallux valgus of the right foot, and acute foot pain. (Dkt. 4-3 at 1317). She discussed treatment options for Love's bunions, gave her gel toe pads, and advised supportive shoes with a large toe box and padding. (*Id.*) She did not mention use of a cane. (*See id.* at 1315–17). Finally, in February 2021, Love went to the hospital following a seizure. (Dkt. 4-3 at 1336–37). Dr. Daniel Jimenez assessed her with unspecified polyneuropathy but determined she had no neurological deficits and had a normal range of motion, reflexes, and coordination. (*Id.* at 1336–39).

**Hearing Testimony**

Love appeared before an ALJ at a hearing on April 6, 2021. (Dkt. 4-1 at 16–26). She testified that she experiences significant pain if she stands longer than 20 minutes but has good days and bad days. (Dkt. 4-1 at 45–46). She explained that she must sit down periodically and sometimes lies down to elevate her leg until the pain subsides. (*Id.* at 46–47). She claimed she could not walk a full lap around the block without stopping, and she walks very slowly with her limp. (*Id.* at 48). Though it was not prescribed, her doctor recommended that she buy a cane, and she had been using it for the year following her car accident and hospitalization. (*Id.* at 47–48). Love testified that she does not walk without the cane outside. (*Id.* at 49). She also soaks her feet three times each day to keep swelling down. (*Id.* at 52).

A vocational expert (VE) also testified at Love's hearing regarding whether someone assessed with an RFC capable of "light" work could perform any of Love's prior work.[1] (Dkt. 4-1 at 57–62). The VE said that someone capable of light work could work in Love's prior positions as a bottle cap inspector, customer service clerk, or retail clerk as defined in the *Dictionary of Occupational Titles*. (*Id.* at 58). But he also opined at Love's age (54 years old at the time she filed her application) education, and skill level, if she were capable of only sedentary work, she would be per se disabled under the Medical-Vocational Guidelines.[2] (*Id.* at 59–61). He testified that someone who could only stand and walk for up to four hours in an eight-hour workday and sit for up to six hours in an eight-hour workday could not perform light work. (*Id.* at 59–60). Neither

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201 (providing that an individual approaching advanced age between ages of 50 and 54 is disabled if limited to sedentary work, has education that does not provide direct entry into skills work, and has no transferable skills from previous work experience).

could someone who requires a cane for ambulation. (*Id.* at 60). Nor could someone who needed additional breaks to elevate her legs beyond regularly scheduled breaks for approximately 20% of the workday. (*Id.* at 61). Such a claimant in any of these hypothetical scenarios would be capable of "sedentary" work only and therefore disabled.[3] (*Id.* at 59–61).

**ALJ Opinion**

The ALJ applied the five-step sequential analysis required by 20 C.F.R. § 404.1520(a) and § 416.920(a). (Dkt. 4-1 at 16–26). *See Zellweger v. Saul*, 984 F.3d 1251, 1253 (7th Cir. 2021). She concluded that Love had not engaged in substantial gainful employment since her accident on December 22, 2019 (step one). (Dkt. 4-1 at 19). She found that Love had a severe, medically determinable impairment of a right femur fracture resulting from her motor vehicle accident (step two). (*Id.*) The ALJ also considered additional impairments and concluded they were not severe. (*Id.* at 19–22). At step three, she determined that none of Love's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22).

The ALJ then conducted the RFC assessment used in steps four and five. She found that Love could perform light work as defined in 20 C.F.R. § 404.1567(b), "except no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; occasional balancing, stooping, crouching, and kneeling; no crawling; no work at unprotected heights or work around hazardous machinery; . . . ." (Dkt. 4-1 at 23). The ALJ discussed Dr. Patel's consultative examination and Dr. Bender's subsequent examination. (*Id.* at 24–25). She noted Love's use of a cane but stated "[t]here was no indication of residual complication or need for use of a cane after the consultative examination in

---

[3] "Sedentary work involves lifting no more than 10 pounds a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

August 2020" according to the medical evidence. (*Id.* at 24–25). She gave weight to Dr. Bender's observations that in December 2020, explaining that Love had "a normal gait with no indication of use of a cane at this appointment." (*Id.* at 25).

At step four, the ALJ determined that Love's RFC allowed her to perform past relevant work as a customer service clerk, cashier, and stocking, as well as light work as a bottle cap inspector. (*Id.*) She therefore concluded that Love is not disabled and denied DIB and SSI benefits. (*Id.* at 25–26). The Appeals Council denied review. (*Id.* at 1–6).

## LEGAL STANDARD

On judicial review, an ALJ's factual findings "shall be conclusive" if supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). This means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154. This is not a high threshold. *Id.* There must be "an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The Court does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

## DISCUSSION

On judicial review, Love challenges only the ALJ's conclusions as to the necessity of using a cane for ambulation in her RFC assessment. (Dkt. 7 at 1). According to the vocational expert's testimony, a claimant of Love's age and other abilities who needs a cane or who can stand only for four hours in an eight-hour workday cannot sustain the ambulation required for her prior light

work.[4] (Dkt. 4-1 at 59–61). Love contends that the ALJ erred by failing to evaluate the credibility of her hearing testimony where she explained that she needed a cane whenever she left the house. (Dkt. 7 at 9).

"The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1545. In making an RFC assessment, the ALJ must evaluate the claimant's limitations "based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (cleaned up and internal citations omitted). The ALJ must consider all relevant evidence in the record. SSR 96-8p. She may not discount evidence contrary to the ruling. *Murphy*, 759 F.3d at 817 (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)).

Here, contrary to Love's assertions, the ALJ considered Love's hearing testimony that she needed a cane for ambulation but found this claim was not consistent with the medical evidence. The ALJ discussed Love's testimony and her use of a cane. (Dkt. 4-1 at 23 ("A cane was not prescribed by any doctor, but she was told that she could use a cane which helps when walking. The claimant uses a cane when she leaves the home. She tries not to be dependent with the cane in the house.")). The ALJ then weighed the medical evidence and acknowledged use of a cane at Dr. Patel's August 2020 consultative evaluation. (*Id.* at 24). But she contrasted this with the December 2020 appointment with Dr. Bender, where Love "had a normal gait with no indication of use of a cane at this appointment." (*Id.*) Finally, she noted a February 2021 assessment by Dr. Jimenez where he indicated "normal range of motion with normal coordination and reflexes." (*Id.*)

---

[4] As an individual closely approaching advanced age with her attendant characteristics, Love would have been per se disabled at step four of the sequential analysis if capable of no more than sedentary work, pursuant to the Medical-Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 (1995), §§ 201.10, 201.12.

7

Together, this medical evidence led the ALJ to conclude that "there was no indication of residual complication or need for use of a cane after the consultative examination in August 2020." (*Id.*) She then explained that the RFC assessment accounted for Love's physical limitations from residual neuropathy, pain, and swelling by restricting her to light work with some postural limitations. (*Id.*)

The ALJ thus took Love's testimony about her cane use into account, but she explained why it was not consistent with the medical evidence considering the record as a whole. *See, e.g.*, *Tovar v. Berryhill*, No. 18 C 2260, 2018 WL 6696568, at *3 (N.D. Ill. Dec. 20, 2018) ("An ALJ must always 'include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.'").

Love relies on *Dwayne E. v. Saul* to argue that the ALJ here did not consider all the evidence of cane use in evaluating her need for it. No. 20 C 4103, 2021 WL 4745300 (N.D. Ill. Oct. 12, 2021). But in that case, the claimant's "cane use was noted in numerous parts of the record," while the ALJ mentioned "only a few instances of [claimant's] cane use in her recitation of [his] medical history." *Id.* at *3, *4. Several doctors throughout the *Dwayne E.* record noted cane use, and both the claimant and his wife described it as necessary. *Id.* at *3–4. Yet the court found the ALJ failed to meaningfully discuss cane use in the RFC assessment. *Id.* at *3 ("There is substantial evidence in the record supporting [claimant's] cane use which the ALJ should have, at a bare minimum, mentioned in her functional limitation evaluation."). *See also, e.g.*, *Davis v. Berryhill*, No. 16-CV-7372, 2017 WL 4772714, at *7 (N.D. Ill. Oct. 23, 2017) (finding the ALJ erred by not addressing the claimant's use of a cane in assessing his RFC); *Newell v. Astrue*, 869 F. Supp. 2d 875, 892 (N.D. Ill. 2012) ("Even when a cane is not prescribed by a physician, an ALJ

errs when he does not include its use in the RFC *and* does not explain his reasons for not doing so.").

Here, by contrast, the ALJ included a discussion of Love's testimony and the medical evidence that she used a cane at her August 2020 appointment. The ALJ also addressed the state agency's opinion and found the RFC assessment consistent with the medical record. (*Id.* at 24). This opinion included Dr. Jhaveri's November 2020 observations that Love used a cane during her appointment but nevertheless found Love capable of light work. (*See* dkt. 4-1 at 111, 116, 126, 131). The ALJ was persuaded, though, that no subsequent medical evidence supported use of a cane as a medical necessity. She acknowledged in her RFC assessment that Love's representative pointed to her continued use of a cane eight months after her car accident. (Dkt. 4-1 at 25). But the ALJ returned to the most recent examinations by Dr. Bender and Dr. Jimenez, and she repeated their assessments that she had relied on to make her decision. (*Id.*)

The ALJ, then, did not ignore Love's hearing testimony about her cane use in the RFC assessment. Rather, she explained why the most recent medical evidence in the record did not support the testimony. She placed greater weight on the medical evaluations conducted most recently, so her finding was supported by substantial evidence in the record. She also adequately explained the conclusions she drew from this evidence. Love essentially asks this Court to reweigh the evidence and find her testimony more persuasive than did the ALJ. This is not the Court's role. *See Reynolds*, 25 F.4th at 473.

## CONCLUSION

The Court grants the Commissioner's Motion for Summary Judgment and affirms the findings of the administrative law judge. [8]

_____
Virginia M. Kendall
United States District Judge

Date: March 28, 2023